**Arthur CALDERON, Warden, Petitioner,**

v.

**The UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, Respondent,**

**Robert Henry Nicolaus, Real–Party–In–Interest.**

No. 96–70032.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted by Telephone May 24, 1996.

Decided Oct. 22, 1996.

Dane R. Gillette, Senior Assistant Attorney General, San Francisco, California, for petitioner.

David L. Anderson, Anderson & Zimmer, Oakland, California, and Stephanie Ross, Point Roberts, Washington, for real-party-in-interest.

Before: SCHROEDER, O'SCANNLAIN and KLEINFELD, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a California death row inmate is entitled to discovery before filing a federal habeas petition.

I

Arthur Calderon, Warden of the California State Prison at San Quentin, petitions this court for a writ of mandamus (1) to vacate the discovery order issued by the district court upon the request of Real Party in Interest Robert Henry Nicolaus, and (2) to prohibit the issuance of any discovery orders until Nicolaus files a fully exhausted habeas corpus petition.

Nicolaus murdered his three children (ages two, five, and seven) in May 1964. He was convicted of three counts of first degree murder and sentenced to death, but the California Supreme Court reduced his convictions to second degree murder and the State released him on parole in August 1977.

In February 1985, Nicolaus killed his ex-wife, who identified him as her killer before her death. Nicolaus fled California, but the FBI arrested him in Pennsylvania in July 1985. A Santa Clara jury convicted Nicolaus of one count of first degree murder and returned a sentence of death in March 1987. The California Supreme Court affirmed the death sentence in October 1991 and denied his state habeas petition in November 1991. The U.S. Supreme Court denied certiorari in June 1992. *Nicolaus v. California,* 505 U.S. 1224, 112 S.Ct. 3040, 120 L.Ed.2d 908 (1992).

In September 1992, the district court granted Nicolaus' motion for a stay of execution, and in April 1993 the court appointed counsel for Nicolaus' federal habeas appeal. To date, Nicolaus has not filed a petition.

In October 1995, counsel for Nicolaus filed a discovery motion to serve subpoenas on the Sacramento District Attorney's Office and the Sacramento Police Department, seeking access to all documents pertaining to Nicolaus' case.[1] Nicolaus maintains that the FBI has not given him all the documents relevant to his case, and he hopes to find some of these FBI documents in the files of the Sacramento authorities.

On December 8, 1995, without holding a hearing and without presenting any explanation of "good cause," the district court granted Nicolaus' motion to serve the subpoenas. The district court denied Calderon's request for a stay of the discovery order pending application to this court for a writ of mandamus. Calderon filed a timely petition with an emergency motion for a stay of the discovery order. We granted the stay on April 5, 1996.

II

Rule 6(a) of the Federal Rules Governing Section 2254 Cases allows parties to engage in discovery in the discretion of the court and "for good cause shown." The rule provides that a "party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." *See Campbell v. Blodgett,* 982 F.2d 1356, 1358 (9th Cir.1993) (citation omitted) ("there simply is no federal right, constitutional or otherwise, to discovery in habeas proceedings as a general matter").

Rule 6(a) is silent as to whether a district court may order discovery before a petition has been filed. The Advisory Committee Note states:

This rule contains very little specificity as to what types and methods of discovery should be made available to the parties in a habeas proceeding, or how, once made available, these discovery procedures should be administered. The purpose of this rule is to get some experience in how discovery would work in actual practice by

---

1. Nicolaus has not sought this discovery from the California state courts.

letting district court judges fashion their own rules in the context of individual cases.

## A

On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act of 1996 (the "Act"), Pub.L. No. 104–132, 110 Stat. 1217. As a threshold matter, we must consider what impact, if any, the Act may have on Calderon's mandamus petition.

Title I of the Act, which amends Chapter 153 of Title 28 of the United States Code, applies to all federal habeas challenges to state criminal judgments. *See Felker v. Turpin,* —— U.S. ——, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (upholding Title I of the Act as constitutional). Since the Act is silent as to the date of effectiveness that attaches to these provisions, courts reviewing Chapter 153 must determine whether the provision at issue is substantive (presumption against retroactivity applies) or procedural (presumption in favor of retroactivity applies). *See Chenault v. U.S. Postal Service,* 37 F.3d 535, 538 (9th Cir.1994) (interpreting *Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). However, we need not decide whether Chapter 153 applies to this petition for mandamus because the Chapter's provisions do not deal with pre-petition discovery. The provisions mainly address how courts should treat allegations once they have already been outlined in a petition.

The Act adds Chapter 154 to Title 28 of the United States Code. This new Chapter contains additional provisions applicable to habeas review of state death penalty judgments in states that comply with certain conditions. Although Chapter 154 applies to cases pending on or after the date of enactment, the United States District Court for the Northern District of California has enjoined Calderon from asserting that California is entitled to the benefits of the provi-

sions of Chapter 154 "in any state or federal proceeding involving any prisoner under sentence of death by the State of California." *Ashmus v. Calderon,* 935 F.Supp. 1048 (N.D. Cal. 1996) (Henderson, C.J.), *calendared for appeal,* No. 96–16141 (9th Cir. Sept. 18, 1996); *see Calderon v. Ashmus,* No. 96–16141 (9th Cir. June 20, 1996) (denying emergency motion for stay of injunctive relief). In any case, nothing in Chapter 154 deals directly with discovery, let alone pre-petition discovery under Rule 6. Accordingly, we need not consider the applicability of the Act.

## B

■ We now consider the merits of Calderon's petition. In determining whether to issue a writ of mandamus, we balance the following five factors ("the *Bauman* factors"):

(1) whether the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief he desires;

(2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal;

(3) whether the district court's order is clearly erroneous as a matter of law;

(4) whether the district court's order is an oft repeated error or manifests persistent disregard for the federal rules; and

(5) whether the district court's order raises new and important problems or issues of law of first impression.

*In re Cement Antitrust Litig.,* 688 F.2d 1297, 1301 (9th Cir.1982) (citing *Bauman v. U.S. Dist. Ct.,* 557 F.2d 650, 654–55 (9th Cir. 1977)), *aff'd sub nom. Arizona v. U.S. Dist. Ct.,* 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983); *see* 28 U.S.C. § 1651. Although all five factors need not be satisfied, "it is clear that the third factor, the existence of clear error as a matter of law, is dispositive." *Executive Software North Am., Inc. v. U.S. Dist. Ct.,* 24 F.3d 1545, 1551 (9th Cir.1994) (citations omitted).[2] *See generally In re Ce-*

---

**2.** In addition, this court has held that mere error (versus clear error) may suffice:

> [I]n supervisory mandamus cases involving questions of law of major importance to the administration of the district courts .... we

see no legitimate reason for refraining from exercising our supervisory authority where we can determine that an error has been made but cannot, for whatever reason, characterize the error as "clearly" erroneous.

*ment,* 688 F.2d at 1301 ("all of the guidelines are unlikely to be met in any one case" and "the guidelines serve only as a useful starting point").

1

■ Since the third *Bauman* factor can be dispositive, we begin by considering whether the district court clearly erred as a matter of law.

■ We conclude that pre-petition discovery is impermissible for at least four reasons. First, a prisoner must outline factual allegations in a petition before the district court will be able to determine the propriety of discovery. As the Supreme Court stated in *Harris v. Nelson,* 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969), which established the basis for Rule 6: "[I]n appropriate circumstances, a district court, confronted by a petition for habeas corpus which establishes a prima facie case for relief, may use or authorize the use of suitable discovery procedures...." *Id.* at 290, 89 S.Ct. at 1086 (emphasis added); *see also Mayberry v. Petsock,* 821 F.2d 179, 185 (3d Cir.) (citation omitted) ("Unless the petition itself passes scrutiny, there would be no basis to require the state to respond to discovery requests."), *cert. denied,* 484 U.S. 946, 108 S.Ct. 336, 98 L.Ed.2d 362 (1987).

Second, any right to federal discovery presupposes the presentation of an unexhausted federal claim, because a federal habeas petitioner is required to exhaust available state remedies as to each of the grounds raised in the petition. *See Duncan v. Henry,* — U.S. —, —, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (per curiam); *see also Keeney v. Tamayo–Reyes,* 504 U.S. 1, 9, 112 S.Ct. 1715, 1719–20, 118 L.Ed.2d 318 (1992) ("[t]he state court is the appropriate forum for resolution of factual issues in the first instance, and creating incentives for the deferral of fact-finding to later federal-court proceedings can only degrade the accuracy and efficiency of judicial proceedings"). Here, it is undisput-

ed that Nicolaus has not sought the desired discovery from the California state court.

Third, Rule 6 is limited to "the processes of discovery available under the Federal Rules of Civil Procedure" and, with one inapplicable exception, the Federal Rules of Civil Procedure do not permit pre-complaint discovery. The exception arises when a party can show the need to perpetuate testimony that may not be available later. Fed. R.Civ.P. 27. Here, Nicolaus does not contend that his discovery request qualifies for this exception.

Fourth, courts should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation. *See Ward v. Whitley,* 21 F.3d 1355, 1367 (5th Cir.1994) (footnotes omitted) ("federal habeas court must allow discovery and an evidentiary hearing only where a factual dispute, if resolved in the petitioner's favor, would entitle him to relief.... Conclusory allegations are not enough to warrant discovery under Rule 6 ...; the petitioner must set forth specific allegations of fact. Rule 6 ... does not authorize fishing expeditions."), *cert. denied,* — U.S. —, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995); *United States ex rel. Nunes v. Nelson,* 467 F.2d 1380, 1380 (9th Cir.1972) (state prisoner "is not entitled to a discovery order to aid in the preparation of some future habeas corpus petition"); *Aubut v. State of Maine,* 431 F.2d 688, 689 (1st Cir.1970) ("Habeas corpus is not a general form of relief for those who seek to explore their case in search of its existence."). Nicolaus' eligibility for discovery is especially questionable because the prisoners in *Ward, Nunes,* and *Aubut* at least filed a federal habeas petition. If the ambiguous allegations of these prisoners were insufficient to justify discovery, then certainly the utter absence of any specific allegations should preclude discovery.

In sum, we hold that the district court clearly erred in granting Nicolaus' discovery

---

.... Moreover, in light of the fact that the petition represents a question of law of first impression, the resolution of which would have a substantial effect on the orderly and efficient administration of the courts, we might

issue the writ even were we simply to conclude that the district court was in error.

*In re Cement,* 688 F.2d at 1307 (footnote· omitted).

request before Nicolaus presented specific allegations in the form of a verified petition.

In so holding, we reject Nicolaus' assertion that the "cause and prejudice" test, which must be met by prisoners who attempt to file a successive federal habeas petition that raises new claims, counsels in favor of generous pre-petition discovery. *See McCleskey v. Zant,* 499 U.S. 467, 498, 111 S.Ct. 1454, 1470, 1472, 113 L.Ed.2d 517 (1991) ("petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition"); *Brown v. Vasquez,* 952 F.2d 1164, 1167 (9th Cir.) (habeas petitioner "must assert all possible violations of his constitutional rights in his initial application or run the risk of losing what might be a viable claim"), *cert. denied,* 503 U.S. 1011, 112 S.Ct. 1778, 118 L.Ed.2d 435 (1992). This argument is a thinly veiled attempt to justify fishing expeditions before the filing of first petitions. The rationale offered by Nicolaus would apply to every potential habeas petitioner, thus creating an exception that would swallow the exhaustion rule. *See In re Parker,* 49 F.3d 204, 213 (6th Cir.1995) ("there is nothing in *McCleskey,* in *McFarland,* or in [21 U.S.C. § 848(q)(4)(B) ], that indicates that federal courts may intervene to prevent execution for an indefinite period to assist in [the preparation of the first federal habeas petition]").

■■■ Prisoners, such as Nicolaus, who come to federal court after having been denied habeas relief by the highest court of a state, may file a federal habeas petition that raises the same issues contained in their state habeas proceedings. Here, Nicolaus could have done that, but has not.[3] In his state habeas proceedings, Nicolaus alleged juror misconduct, erroneous penalty instructions, and improper denial of separate guilt and penalty phase juries. Because Nicolaus exhausted these claims in state court, he could simply file a federal habeas petition raising these issues. In short, if Nicolaus wishes to allege formally that the FBI has withheld documents that he believes may tend to exonerate him, he should first bring such an unexhausted claim before the California state court.

Since the district court clearly erred in permitting discovery before the petition for writ of habeas corpus had been filed, Calderon has satisfied the third *Bauman* factor.

### 2

We also conclude that the remaining *Bauman* factors weigh in favor of issuing the writ.

■■■ The first factor is satisfied because Calderon could not have directly appealed the district court's discovery order. A petition for mandamus is the appropriate means to challenge such an order. Nicolaus does not challenge this conclusion.

The second factor is satisfied because once the state complies with the discovery order, the damage will be done—i.e., Nicolaus will have succeeded in delaying his execution by engaging in a comprehensive search through the government's files without having made any specific allegations.[4] *See In re Blodgett,* 502 U.S. 236, 239, 112 S.Ct. 674, 676, 116 L.Ed.2d 669 (1992) (citing *McCleskey,* 499 U.S. at 489–93, 111 S.Ct. at 1468–69) (stressing state's "sovereign power to enforce the criminal law, an interest we found of great weight in *McCleskey* when discussing the importance of finality in the context of federal habeas corpus proceedings").

■■■ The fourth factor also weighs in favor of issuance of the writ. Because district

---

**3.** Unlike non-capital prisoners who initiate habeas proceedings by filing a petition for a writ of habeas corpus, capital prisoners commence federal habeas proceedings by filing a request for appointment of counsel. *McFarland v. Scott,* —— U.S. ——, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994).

**4.** Nicolaus makes much of the fact that Calderon does not officially represent the two agencies that are the subjects of Nicolaus' two subpoenas: the

Sacramento District Attorney's Office and the Sacramento Police Department. Nicolaus relies on this fact for his argument that Calderon cannot be irreparably harmed by the discovery. This argument lacks merit because Calderon, as representative of the State of California, certainly can be damaged and prejudiced by any attempt to delay the state-sanctioned execution date or to bypass the state's habeas procedures (with respect to original factfinding).

courts do not publish discovery orders, it is not easy to ascertain whether district courts repeatedly order pre-petition discovery. However, there is at least one other case pending before this court that involves the issue presented here, and we take judicial notice of these proceedings. *See Calderon v. U.S. Dist. Ct. (Hill)*, No. 96–70039 (9th Cir. submission deferred). In the transcript of the *Hill* hearing, Judge Claudia Wilken stated: "I believe that pre-petition discovery is allowable and none of the orders allowing it has been published, but that's not, I suppose, precedential authority. They have been ordered in other cases, and I can order it in this case as well." Transcript of Proceedings Before Hon. Claudia Wilken, *Hill v. Calderon*, No. C94–0641, at 4 (N.D.Cal. Dec. 8, 1996). Judge Wilken's statement supports the conclusion that pre-petition discovery may be an oft repeated error committed by the district courts.

Finally, the fifth factor weighs in favor of issuance of the writ because both parties recognize that this mandamus petition presents a legal issue of first impression.

### III

In sum, all five *Bauman* factors weigh in favor of granting Calderon's petition for a writ of mandamus. Accordingly, we grant the petition for a writ of mandamus (1) to vacate the discovery order issued by the district court, and (2) to prohibit the issuance of any discovery orders until Nicolaus files a federal petition for writ of habeas corpus.

**PETITION GRANTED.**

SCHROEDER, Circuit Judge, concurring.

Nicolaus seeks discovery under Rule 6 of the rules governing section 2254 cases in the United States district courts. "By their terms, the habeas rules only apply to 'procedures in the United States district courts on *applications* under 28 U.S.C. § 2254.' " *McFarland v. Scott*, 512 U.S. 849, ——, 114 S.Ct. 2568, 2575, 129 L.Ed.2d 666 (O'Connor, J., concurring in the judgment in part and

dissenting in part) (quoting Rule 1(a)) (emphasis in original). Because their terms make the rules operative only upon an application under § 2254, I concur in the majority's holding prohibiting any discovery until Nicolaus has filed a federal habeas corpus petition. *See* Rule 2(a) ("the application shall be in the form of a petition for a writ of habeas corpus").

I write separately to address a concern similar to that raised by the Supreme Court in *McFarland*. The Court there considered 21 U.S.C. § 848(q)(4)(B), which authorizes appointment of counsel for indigent capital prisoners in "any post conviction proceeding" under §§ 2254 or 2255. The Court held that the provision permits the appointment of counsel prior to the filing of a habeas petition. The Court emphasized a habeas petitioner's need for the assistance of counsel in avoiding the pitfalls of heightened pleading requirements, the doctrines of procedural default and waiver, summary dismissal, and, after *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), abuse of the writ doctrine. Given these traps for the unwary, the Court found that providing counsel prior to the filing of a petition was the only way to make the provision of counsel meaningful. The Court feared that "[r]equiring an indigent capital petitioner to proceed without counsel in order to obtain counsel ... would expose him to the substantial risk that his habeas claims never would be heard on the merits." *McFarland*, 512 U.S. at ——, 114 S.Ct. at 2572; *see also id.* at ——, 114 S.Ct. at 2574 (O'Connor, J., concurring in the judgment in part) (expressing same concerns).

A petitioner such as Nicolaus, seeking pre-petition discovery of evidence supporting a *Brady* claim, faces a similar problem. As the *McFarland* Court pointed out, habeas proceedings employ a standard of fact pleading, *see* Rule 2(c),[1] and habeas petitions which appear on their face to be legally insufficient are subject to summary dismissal. Rule 4; *see McFarland*, 512 U.S. at ——, 114 S.Ct. at 2572; *id.* at ——, 114 S.Ct. at 2574 (O'Con-

---

1. Rule 2(c) provides in pertinent part:
    The petition ... shall specify all the grounds for relief ... and shall set forth in summary form the facts supporting each of the grounds thus specified.

nor, J.). Thus it might appear that Nicolaus faces a conundrum: without filing a petition, he cannot get discovery of sufficient facts to satisfy Rule 2(c)'s standard of fact pleading, but upon filing a petition in order to get discovery, his petition, if it states insufficient facts, is subject to summary dismissal before discovery would be ordered. Rule 4. Nicolaus might reasonably fear that unless he is permitted pre-petition discovery, he may never get either discovery or a hearing of his claim on the merits.

The apparent conundrum, however, disappears upon closer examination of the fact pleading requirement of Rule 2(c) and the standard for summary dismissal under Rule 4. Rule 2(c) does not require that a petitioner state facts showing he is *entitled* to relief; rather, he is required only to "set forth in summary form the facts supporting each of the grounds" of his petition. The advisory committee notes to Rule 4 amplify the meaning of this requirement: "[T]he petition is expected to state facts that point to a *'real possibility of constitutional error.'*" Rule 4 advisory committee notes (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir.1970)) (emphasis added); *cf.* FRAP 21(a)(2)(B)(iii) (Proposed Amendments April 23, 1996) (requiring writ petitions to state "the facts necessary to understand the issues presented by the petition"). Thus the facts in a habeas petition need not be so detailed as to establish *prima facie* entitlement to habeas relief; they are sufficient if they suggest the real possibility that constitutional error has been committed. *See Wacht v. Cardwell*, 604 F.2d 1245, 1247 (9th Cir.1979).

Moreover, a habeas court reviewing a petition under Rule 4 reviews only to see if it *plainly appears* that petitioner is *not* entitled to relief. Simply put, Rule 4 is intended to screen out plainly frivolous appeals. *See* Rule 4 advisory committee notes ("it is the duty of the court to screen out frivolous applications"); *see also Blackledge v. Allison*, 431 U.S. 63, 76, 97 S.Ct. 1621, 1630, 52 L.Ed.2d 136 (1977) ("The critical question is whether these allegations, when viewed against the record ..., were so *'palpably incredible,'* so *'patently frivolous or false,'* as to warrant summary dismissal.") (emphasis added). The rule does not require habeas courts to dismiss a petition simply because all the facts showing entitlement to relief have not yet been fully developed. Of course Nicolaus must first exhaust his claim, along with available avenues of discovery, in state court. This it appears he has not done.

Thus a petitioner who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review, and be permitted to obtain discovery under Rule 6 (provided that he meets that Rule's good-cause requirement). In this case, for instance, Nicolaus has credibly alleged the existence of information, *i.e.,* his unredacted FBI files, which may be material to his defense and which was withheld from counsel. These facts, if pled in a properly exhausted habeas petition, would at least colorably state a *Brady* claim; such a petition should not be subject to summary dismissal under Rule 4. Once Nicolaus has filed a federal habeas petition alleging these facts, he should be able to obtain Rule 6 discovery upon a showing of good cause, which the district court in this case was satisfied he had made.

Until Nicolaus has filed a federal habeas petition on an exhausted claim, he cannot avail himself of Rule 6 discovery. Once filed, however, his petition should not be subject to dismissal until after the court has dealt with the discovery request.